IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Billy Eugene Wall, Jr., <br><br>                  Plaintiff, <br><br>v. <br><br>Capt. Charles Frazer, *Colleton County Detention Center*; Officer Thomas Richberg, *Colleton County Detention Center*; and Officer Joe Waring, *individually and in their official capacities*, <br><br>                  Defendants. | Civil Action No.2:12-cv-00618-RMG-BHH <br><br>**REPORT AND RECOMMENDATION** <br>**OF MAGISTRATE JUDGE** |

      The Plaintiff, proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983.[1]  This matter is before the Court upon Defendants' Motion for Summary Judgement. (Dkt. No. 75.)

      Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate for consideration.

      The Plaintiff brought the instant action on or about February 25, 2012; on or about April 6, 2012, Plaintiff amended his Complaint. (See Dkt. No. 1; Dkt. No. 19; see also Dkt. No. 20.) On March 28, 2013, Defendants filed a Motion for Summary Judgment. (Dkt. No. 75.) By order filed March 29, 2013, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 77.) Plaintiff filed his Response in Opposition to the Motion for Summary Judgment on or about July 1, 2013. (Dkt. No. 85.)

---

[1] Plaintiff was a pretrial detainee at the time he filed the instant action. It appears, however, that he is no longer incarcerated.

## PROCEDURAL FACTS

Plaintiff, who was incarcerated at the Colleton County Detention Center ("Detention Center") at the time he filed the instant Complaint, alleges claims pursuant to 42 U.S.C. § 1983. Plaintiff alleges that on May 14, 2011, he was arrested for grand larceny and placed in the Detention Center. (Dkt. No. 1 at 3 of 5.) According to Plaintiff, he was "given a $20,000 bond" the following day. (Id.) Plaintiff alleges that, "[a]round 47 days later," Plaintiff's charges were "drop[ped] . . . down" to the misdemeanor petit larceny, "which is only a fine or 30 days in jail." (Id.) Plaintiff complains, however, the Defendant Deputy Wallace "did not take me back to bond court to get a lower bond to match the much lower misdemeanor 'petit larceny' charge or to pay the fine." (Id.)

Plaintiff alleges that he "was held longer than what [the] petit larceny charge carried just so that" the Detention Center, SLED, and the Colleton County Police Department "could conduct an investigation and audio tape [Plaintiff] in [his] cell." (Id.) Plaintiff alleges that on July 14, 2011, while he was being held at the Detention Center, he was served with "two new warrants and a search warrant" from Defendant China. (Id.)[2] Plaintiff states that he "was taken to another cell and was locked down;" he alleges that he "could only come out of [his] cell every other day to take a shower." (Id.) Plaintiff alleges that when he was taken to shower, Defendant Officer Richberg or Defendant Officer Waring "would handcuff and shackle [Plaintiff] with a chain between them." (Id.) Plaintiff asserts that with the shackles on, he could not raise his arms, and he had to take a shower "with the handcuffs and shackles on." (Id.) According to Plaintiff, he "had to push the button on the wall for the

---

[2] The exhibits Plaintiff attached to his Amended Complaint indicate that, while in the Detention Center, Plaintiff–on or about June 16, 2011–allegedly solicited his cell-mate to murder a Colleton County Sheriff's Deputy and the Deputy's spouse by setting fire to their house (Dkt. No. 1-1 at 1-3 of 10.) As a result, on July 14, 2011, County Magistrate Keisha D. Gadsden issued two arrest warrants, which were served upon Plaintiff at the Detention Center on July 14, 2011 (Dkt. No. 1-1 at 1-2 of 10).

2

shower with [his] head" because he could not raise his arm high enough to push the button with his hand. (Id. at 3-4.) Plaintiff contends that while he "almost fell a dozen times," he only actually fell one time and "was lucky to land on [his] butt and shoulder and not [his] head." (Id. at 4.) Plaintiff states, "The only injury I got was to my left foot behind my ankle where the shackle got me where I tried to step back to keep myself from falling." (Id.)

Plaintiff also complains about the health care he received while in the Detention Center. Plaintiff alleges that in June of 2011, he "kept getting an infection in [his] mouth [Plaintiff] thought a bad tooth was causing." (Id.) Plaintiff states that he "had to keep taking antibiotics just about every other month to keep down the infection until they could get [him] to the dentist" in October. (Id.) According to Plaintiff, the dentist told Plaintiff that it was not a bad tooth but instead that Plaintiff "was starting to get pero [sic] a gum disease that needed to be treated because it wouldn't go away." (Id.) Plaintiff states, "The dentist said that he could not treat me" because the Detention Center "would not . . . pay for the treatment" but would only pay to pull teeth. (Id.) Plaintiff alleges the he "got to keep taking antibiotics when the infection g[ot] bad while the pero [sic] disease just ke[pt] getting worse and causing more damage to [his] teeth and gums." (Id.)

In the "Relief" section of his Amended Complaint, Plaintiff states that he seeks a change in the Detention Center's policy allowing inmates to be shackled and handcuffed in the shower. (Id. at 5 of 5; see also Dkt. No. 1-3 at 1 of 2.) Plaintiff seeks damages from Defendants China and Wallace for false imprisonment, emotional distress, and mental anguish. (Dkt. No. 1 at 5 of 5; Dkt. No. 1-3 at 1 of 2.) In addition, Plaintiff seeks damages from Defendants Richberg, Waring, and Fraser for cruel and unusual punishment. (Dkt. No. 1 at 5 of 5: Dkt. No. 1-3 at 1 of 2.)

## APPLICABLE LAW

**Summary Judgment Motion Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

## DISCUSSION

As noted above, Defendants filed a Motion for Summary Judgment on March 28, 2013. (Dkt. No. 75.) Before addressing the arguments in that motion, however, it is worth noting that only three Defendants remain in this case: Defendants Fraser, Richberg, and Waring. The Honorable Richard M. Gergel dismissed Defendants China and Wallace in an order dated January 18, 2013. (Dkt. No. 63.) As such, the only Defendants discussed in the instant Report and Recommendation are Defendants Fraser, Richberg, and Waring.

**A. False Imprisonment Claim**

It is not entirely clear whether Plaintiff attempts to bring a false imprisonment claim against the remaining Defendants. Assuming that he does attempt such a claim, the Defendants are entitled to summary judgment. The Plaintiff's claims for false imprisonment were analyzed–and rejected–by the Honorable Richard M. Gergel in an Order dated

4

January 18, 2013. (See Dkt. No. 63.) Plaintiff's false imprisonment claim against Defendants Fraser, Richberg, and Waring fail for the reasons Plaintiff's false imprisonment claim against Waring and China failed.

Furthermore, like the claim for false arrest, a § 1983 claim for false imprisonment is analyzed as an unreasonable seizure under the Fourth Amendment. See Rogers v. Pendleton, 249 F.3d 279, 294 (4th Cir. 2001). "The Fourth Amendment is not violated by an arrest based on probable cause . . . . " Graham v. Connor, 490 U.S. 386, 396 (1989). As Defendant Fraser stated in his Affidavit, warrant number M-105212 was issued on May 15, 2011, by Magistrate Judge Keisha Gadson for the "alleged theft of property valued at more than $2,000.00 and less than $10,000.00." (Fraser Aff. ¶ 4; see also Fraser Aff. Ex. A1; Fraser Aff. Ex. A2.) When Plaintiff did not post the $20,000 bond, "he was confined in the Colleton County Detention Center on a Commitment Order issued by Judge Gadson" on May 15, 2011. (See Fraser Aff. ¶ 4; Fraser Aff. Ex. B.) On July 14, 2011, Judge Gadson signed an arrest warrant charging Plaintiff with criminal conspiracy to commit murder and conspiracy to commit arson. (See Fraser Aff. ¶ 7; Fraser Aff. Ex. C; Fraser Aff. Ex. D.) On July 14, 2011, Judge Gadson set bond at $5,000 on each charge. (Fraser Aff. Ex. F.) Fraser further states,

> Attached as Exhibit H is the Bond Disposition issued by Judge Gadson on August 11, 2011 showing a reduction of the charge from Grand Larceny to Petit Larceny and evidencing a finding of "Not Guilty." Thus, as of August 11, 2011, Wall would have been released from the Detention Center on the grand larceny/petit larceny charge; however, by that time, he was being held on bond for criminal conspiracy to commit murder and criminal conspiracy to commit arson, and could not be released absent a judicial order. A review of records reveals that no Judge issued an order directing the Detention Center to release inmate Wall from the Colleton County Detention Center following the new charges.

(Fraser Aff. ¶ 12; see also Fraser Aff. Ex. H.) Defendants state in their Memorandum in Support of their Motion for Summary Judgment that the charges against Plaintiff were

ultimately dismissed by the Fourteenth Judicial Solicitor's Office "and in February of 2013, the Plaintiff was released from the Colleton County Detention Center." (Dkt. No. 75-1 at 2; see also Dkt. No. 69.)

Plaintiff's claims for false imprisonment against Defendants Fraser, Richberg, and Waring–all employees of the Detention Center during the relevant time–fail. Plaintiff was held pursuant to the orders of Judge Gadson, who found probable cause to arrest Plaintiff. (See Fraser Aff. Ex. A1; Fraser Aff. Ex. A2; Fraser Aff. Ex. D1.) His false imprisonment claim against Detention Center employees therefore fails. See Baker v. McCollan, 443 U.S. 137, 143-44 (1979); see also Magwood v. U.S. District Court, Civ. A. No. 2:13-307-DCN-BM, 2013 WL 869590, at *4 (D.S.C. Feb. 25, 2013), adopted at 2013 WL 869579 (D.S.C. Mar. 7, 2013) ("That Plaintiff was arrested pursuant to a warrant also negates any claim of false imprisonment . . . .").

**B. Claim for Deliberate Indifference to a Serious Medical Need**

As noted above, Plaintiff complains that in June of 2011, he "kept getting an infection in [his] mouth [Plaintiff] thought a bad tooth was causing." (Dkt. No. 1 at 4 of 5.) Plaintiff alleges that the dentist told him that he "was starting to get pero [sic] a gum disease that needed to be treated because it wouldn't go away." (Id.) Plaintiff states, "The dentist said that he could not treat me" because the Detention Center "would not . . . pay for the treatment" but would only pay to pull teeth. (Id.) Plaintiff alleges the he "got to keep taking antibiotics when the infection g[ot] bad while the pero [sic] disease just ke[pt] getting worse and causing more damage to [his] teeth and gums." (Id.)

In Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." Estelle, 429 U.S. at 104 (internal

citations omitted).³ To prevail on an Eighth Amendment deliberate indifference claim, "a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was sufficiently serious, and (2) that subjectively the prison officials acted with a sufficiently culpable state of mind." Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998) (internal quotation marks and citations omitted). The first element "is satisfied by a serious medical condition," while the second element "is satisfied by showing deliberate indifference by prison officials." Id. It is well-settled that mere negligence does not constitute deliberate indifference. Estelle, 429 U.S. at 105-06; Grayson v. Peed, 195 F.3d 692, 695-96 (4th Cir. 1999); Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (holding that "[d]isagreements between an inmate and a physician over the inmate's proper medical care" are not sufficient to raise an Eighth Amendment claim pursuant to § 1983).

Defendants attached the Affidavit of Dr. Charles Bush to their Motion for Summary Judgment. (See Dkt. No. 76-1.) Dr. Bush states,

> 3. During the time period that Mr. Wall was incarcerated at the Detention Facility, he manifested numerous complaints and received treatment for tooth related complaints including a referral to an outside dentist. The medical records of inmate Wall are attached to this affidavit as Exhibit A.
>
> 4. Wall was treated by medical staff and was referred to a general dentist. He received medical treatment on May 21, 2011 for complaints of tooth irritation where he was given Motrin and an exam; May 28, 2011 for toothache where he was given Motrin and a dental exam; May 30, 2011 for mouth irritation where he was given Amoxicillin and Motrin; August 2, 2011 for toothache where he was given Amoxicillin and a dental referral; October 28, 2011 for gum pain where he was seen by Dentist Dr. Gourdine; March 8, 2012, antibiotics and Motrin for toothache; March 11, 2012 treated with saltwater mouthwash; August 22, 2012 he presented with bleeding gums and was

---

³Medical claims of a pretrial detainee are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment. See City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983). However, the inquiry as to whether a pretrial detainee's rights were violated under the Fourteenth Amendment is the same as that for a convicted prisoner under the Eighth Amendment. See Martin v. Gentile, 849 F.2d 863, 871 (4th Cir. 1988) (citing Estelle, 429 U.S. 97); see also Hill v. Nicodemus, 979 F.2d 987, 990-92 (4th Cir. 1992).

7

> treated with a salt rinse and Motrin; September 6, 2012 given Motrin and Amoxicillin for mouth irritation; December 6, 2012 Motrin and salt mouth rinses for toothache and bleeding gums; December 12, 2012 give Peridex; and January 14, 2013 given amoxicillin saltwater mouth rinse and Motrin for Mouth and gum irritation. In addition, he was treated for various other minor conditions during his incarceration.
>
> 5. Dental treatment was provided by the offices of Dr. Jeffrey C. Gourdine, DMD, General Dentist. Wall was given appropriate treatment for his dental issues to include antibiotics and salt water rinses. Wall was given a tentative diagnosis of ongoing adult periodontal disease that was outside the treatment provided for medical necessity and he was given an estimate for the cost of that treatment outside of the detention facility.

(Bush Aff. ¶¶ 3-5.)

The undersigned recommends granting summary judgment to Defendants on this claim. As noted above, the only Defendants remaining in this action are Fraser, Richberg, and Waring. Fraser was Jail Director of the Detention Center at the time in question. (See Fraser Aff. ¶ 1.) Fraser states in his Affidavit that the Detention Center "contracts for medical and dental services," and "[m]edical services are through Southern Health Partners, an independent medical contractor to the Colleton County Detention Center." (Id. ¶ 15.) Fraser further states,

> As an independent medical contractor, the group provides medical care to inmates incarcerated at the Colleton County Detention facility. A staff physician provides sick call clinics weekly and remains on call for emergencies 24 hours a day, seven days a week. Nurses are also employed to triage the medical needs of inmates and work under the doctor's supervision. The staff doctor makes treatment decisions, including prescribing appropriate treatment and medications, making referrals to specialists and transporting inmates for evaluation or treatment to the hospital. In emergency situations where the doctor is unable to be reached, nursing staff and jail personnel are authorized to directly transport an inmate without the physician's direct order. Absent an emergency situation where the doctor cannot be consulted, transport for treatment or consultation is made by his order only. No constraints were placed or attempted to be placed by the Detention Center upon the ability of medical staff to treat inmates or to make necessary referrals. Wall alleges that the Colleton County Detention Center refused to pay for oral surgery. I have nothing to do with medical decisions or

8

> treatment rendered. Neither I nor my staff ever denied the inmate any medical treatment. Medical records are maintained by Southern Health Partners.
>
> 16. Dental treatment is provided under contract by the offices of Dr. Jeffrey Gourdine DDS, General Dentist. This inmate was referred by the jail Doctor to the dentist and he was taken by Detention Center Staff to appointments made. Wall was given appropriate treatment for his dental issues to include antibiotics, saltwater rinses and Motrin. Wall was given a diagnosis of ongoing adult periodontal disease. Treatment for that condition is optional and was outside the treatment provided for medical necessity. Wall was given an estimate for that treatment by the dentist's office.

(Fraser Aff. ¶¶ 15-16.) Waring, then an officer at the Detention Center, likewise states in his Affidavit that he "ha[s] nothing to do with medical decisions or treatment rendered." (Waring Aff. ¶ 6.) Richberg, an officer at the Detention Center, states that same, that he "ha[s] nothing to do with medical decisions or treatment rendered." (Richberg Aff. ¶ 5.)

None of the Defendants is personally involved with decisions related to Plaintiff's treatment or lack of treatment. And in a § 1983 action, "liability is personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001); see also Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own actions, has violated the Constitution."). Furthermore, the Fourth Circuit has held that to bring a claim alleging the denial of medical treatment against non-medical personnel, a plaintiff must show that such officials were personally involved with the denial of medical treatment, deliberately interfered with the prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' conduct. See Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990) ("[I]t would be an unprecedented extension of the theory of supervisory liability to charge these wardens, not only with ensuring that Gwendolyn received prompt and unfettered medical care, but also with ensuring that their subordinates employed proper medical procedures-procedures learned

9

during several years of medical school, internships, and residencies. No record evidence suggests why the wardens should not have been entitled to rely upon their health care providers' expertise.");[4] see also Lynch v. Jackson, 478 Fed. App'x 613, 619 (11th Cir. 2012) (stating, in affirming grant of summary judgment, "Assuming Felton and Jackson were aware of [the plaintiff's] condition, Defendants permissibly relied on the doctors' opinions that the treatment could either wait or that adequate treatment had been offered and refused."); Neenan v. Sherman, Civ. A. No. 1:09cv1243 (JCC/IDD), 2012 WL 112938, at *2-3 (E.D. Va. Jan. 12, 2012). On the record before this Court, no reasonable jury could find that Defendant Fraser, Richberg, or Waring was deliberately indifferent to Plaintiff's serious

---

[4] Miltier has been overruled by Farmer v. Brennan, 511 U.S. 825 (1994), to the extent that it allowed a finding of deliberate indifference upon constructive knowledge. See Farmer, 511 U.S. 825; Brown v. Mitchell, 308 F. Supp. 2d 682, 708 n.30 (E.D. Va. 2004).

medical needs.[5] The undersigned therefore recommends granting summary judgment to Defendants on this claim.

**C. Conditions of Confinement Claim**

Plaintiff also attempts to assert a conditions of confinement claim; he alleges that once he was served with the "new warrants," he was "taken to another cell and was locked down, and could only come out of [his] cell every other day to take a shower." (Dkt. No. 1 at 3 of 5.) Plaintiff complains that when he was taken to shower, Defendant Officer Richberg or Defendant Officer Waring "would handcuff and shackle [Plaintiff] with a chain between them." (Id.) Plaintiff asserts that with the shackles on, he could not raise his arms, and he had to take a shower "with the handcuffs and shackles on." (Id.) According to Plaintiff, he

---

[5] Defendants also moved for summary judgment on the basis of qualified immunity. The doctrine of qualified immunity protects governmental officials performing discretionary functions from liability for civil damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, this doctrine "protects police officers and public officials from claims of constitutional violations 'for reasonable mistakes as to the legality of their actions.'" Merchant v. Bauer, 677 F.3d 656, 661 (4th Cir. 2010) (quoting Saucier v. Katz, 533 U.S. 194 (2001)). When an official properly asserts the defense of qualified immunity, the official is entitled to summary judgment if either: (1) the facts, taken in the light most favorable to the plaintiff, do not present the elements necessary to state a violation of a constitutional right; or (2) the right was not clearly established, such that it would not have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Pearson v. Callahan, 555 U.S. 223, 231-32 (2009). With respect to the second prong, the court "must consider whether the constitutional right violated 'was clearly established in the specific context of the case–that is, [whether] it was clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted.'" Merchant, 677 F.3d at 662 (quoting Figg v. Schroeder, 312 F.3d 625, 635 (4th Cir. 2002)). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992).

The undersigned notes that in his Response in Opposition, Plaintiff contends that Defendant Fraser "was the jail administrator who approves or denies what the detention center can or cannot do." (Dkt. No. 85 at 9 of 10.) Even if such an allegation is true, Fraser is entitled to qualified immunity because it would not have been clear to Fraser that denying Plaintiff a dental cleaning was unlawful in the situation Fraser confronted. See Tozzi v. N.C. Dep't of Corrs., 846 F.2d 74 (4th Cir. 1988) (unpublished table decision) (affirming grant of summary judgment in case where the plaintiff alleged "that the defendant dentists' decision to treat his periodontal disease with desensitizing agents and the defendant prison officials' failure to respond adequately to his complaints about that treatment constituted deliberate indifference to his serious medical needs"); see also Webb v. Hamidullah, 281 Fed. App'x 159, 165-67 (4th Cir. 2008) (no deliberate indifference on the defendants' classification of the plaintiff's hernia problem as elective, stating, "[E]ven if Dr. Vendel somehow misdiagnosed [the plaintiff's] need for surgery, Dr. Vendel made extensive efforts to diagnose, monitor, and control Webb's hernia symptoms, and . . . he did not disregard any risk of which he was aware"; no deliberate indifference where elective hernia surgery was delayed when there was no "substantial harm to the patient").

11

"had to push the button on the wall for the shower with [his] head" because he could not raise his arm high enough to push the button with his hand. (Id. at 3-4.) Plaintiff contends that while he "almost fell a dozen times," he only actually fell one time and "was lucky to land on [his] butt and shoulder and not [his] head." (Id. at 4.) Plaintiff states, "The only injury I got was to my left foot behind my ankle where the shackle got me where I tried to step back to keep myself from falling." (Id.) Plaintiff also complains that, in order to go to the shower, he had to "strip naked except for a towel that didn't go all the way around" him. (Dkt. No. 1 at 3 of 5.)

Because at all relevant times Plaintiff was a pretrial detainee, his claims are evaluated under the Fourteenth Amendment rather than the Eighth Amendment, which is used to evaluate conditions of confinement for those convicted of crimes. See City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983). Unlike convicted inmates, pretrial detainees have not been adjudicated guilty of a crime and may not be subjected to any form of "punishment." Martin v. Gentile, 849 F.2d 863, 870 (4th Cir.1988). To establish that a condition or restriction of confinement is constitutionally impermissible "punishment," a pretrial detainee must show "either that it was (1) imposed with an expressed intent to punish or (2) not reasonably related to a legitimate nonpunitive governmental objective, in which case an intent to punish may be inferred." Id. (citing Bell v. Wolfish, 441 U.S. 520, 538-40 (1979)). Courts may infer that a restriction or condition is not reasonably related to a legitimate governmental objective, and is therefore punishment, if the restriction is arbitrary or purposeless. Bell, 441 U.S. at 539. However, while the purpose of pretrial confinement is to ensure the detainee's presence at trial, the detention center may impose restraints on the detainee that are reasonably related to the detention center's interest in maintaining the facility's security, even if the restraints "are discomforting and are

12

restrictions that the detainee would not have experienced had he been released while awaiting trial." Id. at 539-40.

The undersigned recommends granting summary judgment to Defendants on the conditions of confinement claim. Although Defendants dispute Plaintiff's assertion that he was shackled during his showers, such a dispute is not a material one. (See, e.g. Fraser Aff. ¶¶ 13-14; Dkt. No. 85-1 at 14 of 15.) Fraser states in his Affidavit that after Plaintiff incurred the "additional charges for solicitation of murder and arson," Plaintiff had to be separated from the informant. (Id. ¶ 13.) Accordingly, Plaintiff "was placed on maximum security status which required that he be in restraints upon movement from his cell." (Id.) Fraser further stated that Plaintiff was shackled because the Detention Center officers had "a duty to protect these inmates and detention officers from [Plaintiff], who had a history of escape attempts and who had solicited crimes" while in the Detention Center. (Id. ¶ 14.) Even assuming Plaintiff was shackled during his showers, he has not shown that such a restriction was imposed with express intent to punish, or that the restriction was not reasonably related to a legitimate nonpunitive governmental objective. Defendants are therefore entitled to summary judgment on the conditions of confinement clam. See Sanders v. Hopkins, 131 F.3d 152, at *2 (10th Cir. 1997) (unpublished table decision) ("The condition or restriction of requiring a pretrial detainee in disciplinary segregation to wear restraints while showering is reasonably related to the legitimate governmental objective of promoting security in the detention facility. Thus, under *Bell*, it does not amount to a "punishment" which would violate the detainee's due process rights."); LeMaire v. Maass, 12 F.3d 1444, 1457 (9th Cir. 1993) (no Eighth Amendment violation where inmates were restrained in handcuffs and shackles during their showers).

**D. Other Claims**

In the "Relief" section of his Amended Complaint, Plaintiff seeks a change in the Detention Center "policy that allows [officers] to handcuff and shackle a[n] inmate in the shower." (Dkt. No. 1 at 5 of 5; Dkt. No. 1-3 at 1 of 2.) However, Plaintiff's request for injunctive relief must be denied as moot, as he is no longer a detainee at the Detention Center. Slade v. Hampton Roads Reg'l Jail, 407 F.3d 243, 248-49 (4th Cir. 2005). Furthermore, to the extent Plaintiff seeks to bring causes of action pursuant to state law in the instant case, the undersigned recommends dismissal of those claims pursuant to 28 U.S.C. § 1367(c)(3). See United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966); United States ex rel. Scott v. Metropolitan Health Corp., 375 F.Supp.2d 626, 647 (W.D. Mich. 2005).

## CONCLUSION

Wherefore, it is RECOMMENDED that Defendants' Motion for Summary Judgment (Dkt. No. 75) be GRANTED as to all of Plaintiff's federal claims, and that Plaintiff's state law claims be DISMISSED.

IT IS SO RECOMMENDED.

                                                  s/Bruce Howe Hendricks
                                                  United States Magistrate Judge

January 14, 2014
Charleston, South Carolina

**The parties' attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> **Robin L. Blume, Clerk**
> **United States District Court**
> **Post Office Box 835**
> **Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).